UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACY TOCKSTEIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV00020 ERW |
| ) | |
| STEVEN SPOENEMAN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Third-Party Defendant's Theresa Tockstein's Motion for Summary Judgment [doc. #57], Plaintiff Tracy Tockstein's Motion for Summary Judgment on Counts II and III of Defendants' Second Amended Counterclaim [doc. #58] and Plaintiff's and Third-Party Defendant's Joint Motion to Strike Defendants' Unauthorized Additional Responses to Plaintiff's and Third-Party Defendants' Motions for Summary Judgment [doc. #67].

This action began as a suit for damages arising out of a contract for the construction of Steven Spoeneman and Rochelle Spoeneman's (collectively, "Defendants") residence by Tracy Tockstein ("Plaintiff"). Subsequently, Defendants filed a third-party claim against Theresa Tockstein, Plaintiff's wife, and a counterclaim against Plaintiff. In their third-party claim and counterclaim, Defendants allege in Count II that Plaintiff and Theresa Tockstein are liable for "Fraud/Misrepresentation," and in Count III, they allege that Plaintiff and Theresa Tockstein are liable for the tort of "Merchandising/Business Practices." Plaintiff and Theresa Tockstein ask that the Court dismiss these claims.

**I.      MOTION TO STRIKE**

The pending Motions seeking summary judgment were filed on January 15, 2009. Defendants filed their responses on February 5, 2009, and reply memorandums were submitted to the Court on February 12, 2009. However, Defendants then filed sur-replies, exhibits, and additional statements of material facts on February 13, 2009. Defendants did not ask the Court for leave to file these documents. Plaintiff and the Theresa Tockstein ask that the Court strike these documents because they are not permitted under the local rules and have not been authorized by the Court.

"Additional memoranda may be filed by either party only with leave of Court." Local Rules 7-4.01(c). Defendants did not seek leave from the Court. Instead, Defendants state that they filed these additional documents because the original case management order gave Defendants thirty days to file their response. They state that the case management order was later amended to twenty days, and that they filed the best response they could within the shortened time frame, and then filed these supplemental documents within the thirty days granted in the original case management order.

This explanation is not persuasive. While Defendants describe the twenty day response time as "shortened," it is the standard time permitted under the rules. It is correct that in the original case management order, issued May 19, 2008, the Court granted Defendants thirty days to file their response. This additional time was requested by Defendants because their response would have been due over the winter holiday season. However, the Court subsequently granted the Parties more time to complete discovery, and moved the dispositive motion deadline from December 15, 2008 to January 15, 2009.[1] Because the reason for the thirty-day response time

---

[1] The time limits set in the case management order were vacated by the Court when the Court moved the dispositive motion deadline. As a result, the fact that these documents were filed within the thirty days is simply irrelevant. The thirty day response period was vacated and

2

was no longer present, the Court stated that responses should be filed within twenty days. If Defendants required more time to complete their responses, they should have requested additional time from the Court. Defendants failed to do so.

Additionally, Defendants state that discovery was not complete by the January 5, 2009 discovery deadline. Defendants argue that as a result, Plaintiff and Theresa Tockstein should not have been permitted to file their Motions on January 15, 2009. The basis for this argument is incorrect. The federal rules clearly state that claiming parties may file motions for summary judgment "at any time after . . . 20 days have passed from commencement of the action" and defending parties may seek summary judgment "at any time." Fed. R. Civ. P. 56(a)-(b). This action was filed on January 8, 2007, and Plaintiff and the Theresa Tockstein were clearly entitled to file their Motions on January 15, 2009. There is no requirement that all discovery must be complete before a party is permitted to seek summary judgment.

Under the local rules, Defendants needed leave to file their sur-replies and other documents. *See Ronwin v. Ameren Corp.*, 2007 WL 4287872, at *2 (E.D. Mo. Dec. 6, 2007). They should have filed a motion for leave along with their proposed sur-reply, or alternatively, they should have asked the Court for additional time to file their initial response. The Court expects the Parties "to abide by the Federal Rules of Civil Procedure and Local Rules" and will strike Defendants' sur-replies and other documents filed on February 13, 2009. *Id.*

## II.    MOTIONS FOR SUMMARY JUDGMENT

### A.    *BACKGROUND FACTS*[2]

---

the amended deadlines clearly stated that "Responses in Opposition shall be filed within twenty (20) days."

[2] The Court's recitation of the facts is taken from Plaintiff's Statement of Uncontroverted Material Facts [doc. #58-2], Defendants' Joint Response to Plaintiff's Statement of

3

Plaintiff brought this action for damages arising out of a contract for the construction of Defendants' residence by Plaintiff. Defendants have introduced evidence that Plaintiff misrepresented his building experience and showed them homes he said he had built, when he actually had not constructed those homes, in order to induce them into awarding him the contract. At his deposition, Plaintiff identified three whole homes that he had constructed, and stated that he told Defendants that the homes he showed them were "the kind of homes I build" and not actually homes that he had built. In contrast, Defendant Rochelle Spoeneman testified that "We asked him to take us to homes that he had built. He took us to one and then he pointed out to us another home where he had done a very - - a sidewalk, a brick sidewalk that was inlaid..."

During the construction, Plaintiff submitted vouchers to Defendants for payment. The Parties' contract declared that Plaintiff's acceptance of payment guaranteed that "all subcontractors, employees, suppliers and materialmen have been paid or will be paid in full at time of Contractor's receipt of payment of Voucher." Defendants have introduced evidence that Plaintiff may have accepted around twenty vouchers without satisfying this requirement.

At his deposition, Defendant Steven Spoeneman was asked whether Theresa Tockstein made any representations to him. He replied, "No. I told you earlier my conversations with [Theresa Tockstein] were limited to her showing up at the job site and talking, you know, friendly conversation, or when I was trying to reach [Plaintiff] and [Plaintiff] wouldn't answer." Similarly, Defendant Rochelle Spoeneman was asked, "[d]id you ever talk to Theresa Tockstein about specifics of the job aside from just saying, Hi, how you doing?" and she responded, "I don't believe so." However, Defendants have introduced evidence that the vouchers may have

---

Uncontroverted Material Facts [doc. #59-2], Third-Party Defendant's Statement of Uncontroverted Material Facts [doc. #58-2] and Defendants' Joint Response to Third-Party Defendant's Statement of Uncontroverted Material Facts [doc. #60-2],

4

contained misrepresentations, and Theresa Tockstein helped complete the vouchers that were submitted to Defendants for payment. At her deposition, Theresa Tockstein stated that she completed these vouchers at Plaintiff's instruction, with his knowledge, in his presence. She stated that she completed the vouchers instead of Plaintiff because he "has terrible handwriting and nobody could read it." Additionally, Theresa Tockstein stated that she submitted payments to Construction Supply without instructions on how the payment was to be applied.

## B.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1).

"By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a

5

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

C.     *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

Plaintiff asks that the Court grant summary judgment on Counts II and III of Defendants' First Amended Counterclaim. The Court will address each Count separately.

1.  **Count II: Fraud/Misrepresentation**

Plaintiff asserts that the Fraud/Misrepresentation claim should be dismissed because the statements that form the basis for this claim were either statements of opinion or promises to act in the future, and Defendants cannot recover on the basis of these statements.

The first statement at issue deals with Plaintiff's representations related to his past whole home construction experience. Defendants allege that Plaintiff represented "that he had experience as the general contractor on numerous prior contracts of the size and complexity proposed in the Contract and he further displayed other homes he represented he had built." Defendants assert that Plaintiff lied about his building experience and showed them homes he said he had built, when he actually had not constructed those homes, in order to induce them into awarding him the contract.

Any statements Plaintiff made about his ability to complete the project are considered "an expression of opinion and not a statement of fact" are not actionable. *Constance v. B.B.C. Development Co.*, 25 S.W.3d 571, 587 (Mo. Ct. App. 2000). Even if these statements were false, they were merely "puffing." To be actionable, "the statement [must be] reasonably interpretable as expressing a firm intention and not merely as one of these "puffing" statements which are so frequent in negotiations for a commercial transaction as to make it unjustifiable for the recipient to rely upon them." *Clayton Brokerage Co. of St. Louis, Inc. v. Teleswitcher Corp.*, 555 F.2d 1349, 1351 (Mo. Ct. App. 1977). However, any representations Plaintiff made related to his experience and the houses he stated that he built involve statements of fact, and are actionable.

The other statements at issue in Defendants' claim for Fraud/Misrepresentation involve the vouchers Plaintiff submitted to Defendants. These vouchers were issued pursuant to the Parties' contract, which declared that Plaintiff's acceptance of payment guaranteed that "all subcontractors, employees, suppliers and materialmen have been paid or will be paid in full at time of Contractor's receipt of payment of Voucher." Defendants claim that Plaintiff's acceptance of approximately twenty vouchers without satisfying this requirement constituted a misrepresentation.

Plaintiff asserts that summary judgment is appropriate because these statements are not actionable. Plaintiff states that his acceptance of the vouchers only constituted a promise to perform, and the breach of a promise to perform "does not constitute a misrepresentation of fact, or create an action for fraud." *Wages v. Young*, 261 S.W.3d 711, 715 (Mo. Ct. App. 2008). This is generally correct, however, "[i]t is well settled in Missouri that a promise made without the present intention to perform is a misrepresentation sufficient to demonstrate fraud." *Information Technologies, Inc. v. Cybertel Corp.*, 66 S.W.3d 126, 128 (Mo. Ct. App. 2001) (internal citations omitted). As a result, Count II remains pending before the Court for representations Plaintiff made related to his home construction experience and his acceptance of these vouchers.

**2.      Count III: Merchandising/Business Practices**

Plaintiff also asks that the Court grant summary judgment on Defendants' claim for Merchandising/Business Practices under the Missouri Merchandising Practices Act. The Merchandising Practices Act ("MPA") was enacted "to supplement the definition of common law fraud." *Mattingly v. Medtronic, Inc.*, 466 F.Supp.2d 1170, 1173 (E.D. Mo. 2006) (citing *Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 899 (Mo. Ct. App. 2003)). The statute declares acts of "deception, fraud, false pretense, false promise, misrepresentation, unfair practice

or the concealment, suppression, or omission of any material fact . . . to be an unlawful practice." Mo. Rev. Stat. § 407.020(1).

Plaintiff states that Defendants based this claim upon their allegations of fraud in Count II. She states that since this claim "is based entirely upon the facts stated in Count II . . . [and Count II] fails due to lack of an essential element . . . [Count III] fails as well." As the Court discussed above, Count II remains pending against Plaintiff for representations Plaintiff made related to his home construction experience and his acceptance of these vouchers. As a result, this argument fails, and Count III against Plaintiff remains pending before the Court.

## C.   *THERESA TOCKSTEIN'S MOTION FOR SUMMARY JUDGMENT*

In this Motion, the Theresa Tockstein asserts that Count II should be dismissed because no representation was made. She then asserts that summary judgment should be granted on Defendants' Count III because the allegations in Count III are based upon Count II. The Court will address these claims separately.

### 1.   Count II: Fraud/Misrepresentation

When asked whether Theresa Tockstein made any representations to him, Defendant Steven Spoeneman stated, "No. I told you earlier my conversations with [Theresa Tockstein] were limited to her showing up at the job site and talking, you know, friendly conversation, or when I was trying to reach [Plaintiff] and [Plaintiff] wouldn't answer." Similarly, Defendant Rochelle Spoeneman was asked, "[d]id you ever talk to Theresa Tockstein about specifics of the job aside from just saying, Hi, how you doing?" and she responded, "I don't believe so." Theresa Tockstein asserts that Defendants' claim for fraud/misrepresentation in Count II of their First Amended Counterclaim should be dismissed because she did not make any representations.

Defendants respond that these questions only deal with verbal misrepresentations. They state that their claim for fraud/misrepresentation should not fail because Theresa Tockstein helped complete the vouchers that were submitted to Defendants for payment. They state that the vouchers contained misrepresentations, and that Theresa Tockstein is liable for her role in completing the vouchers. Additionally Defendants assert that Theresa Tockstein is liable for Fraud/Misrepresntation because she "admitted that she would take payments to Construction Supply and did not provide any instructions on how the payment was to be applied."

Defendants' claim related to the vouchers is based on Theresa Tockstein's status as an agent for Plaintiff. Theresa Tockstein asserts that this claim should be dismissed because she was merely acting as an agent, and cannot be personally liable for any misrepresentations contained in these vouchers. Theresa Tockstein stated at her deposition that she completed these vouchers at Plaintiff's instruction, with his knowledge, in his presence. She stated that she completed the vouchers instead of Plaintiff because he "has terrible handwriting and nobody could read it." However, Theresa Tockstein is incorrect in her argument that her status as an agent absolves her from liability. "It is well known . . . that if the agents were guilty of any fraud while pursuing, or in furtherance of the principal's business, the principal would automatically be liable jointly with the agents." *Pinger v. Guaranty Inv. Co.*, 307 S.W.2d 53, 58 (Mo. Ct. App. 1957). Theresa Tockstein's status as an agent will not absolve her from liability for any misrepresentations made in the vouchers she completed.

Conversely, Theresa Tockstein cannot be liable for Fraud/Misrepresentation for Defendants assertion that she took "payments to Construction Supply and did not provide any instructions on how the payment was to be applied." To make a prima facie claim for fraud or

misrepresentation under Missouri law, a claimant must plead facts establishing the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007) (citing *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988)). "A failure to establish any one of the essential elements of fraud is fatal to recovery." *Heberer*, 744 S.W.2d at 443. Theresa Tockstein has satisfied the initial burden of proof by demonstrating "the non-existence of any genuine issue of fact that is material to a judgment in [her] favor." *City of Mt. Pleasant, Iowa*, 838 F.2d at 273. The burden then shifts to Defendants to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. Defendants have failed to provide any evidence that they "heard" this misrepresentation, which prevents them from establishing the sixth, seventh, eighth and ninth elements of this tort. Summary judgment is appropriate on Defendants' claim of Fraud/Misrepresentation against Theresa Tockstein related to the Construction Supply payments.

**2.     Count III:  Merchandising/Business Practices**

Theresa Tockstein states that Defendants based this claim upon their allegations of fraud in Count II. She states that since this claim "is based entirely upon the facts stated in Count II . . . [and Count II] fails due to lack of an essential element . . . [Count III] fails as well." As the Court discussed above, Count II remains pending against Theresa Tockstein for her role in preparing the vouchers. As a result, this argument fails, and Count III against Theresa Tockstein remains pending before the Court.

Accordingly,

**IT IS HEREBY ORDERED** that Third-Party Defendant's Theresa Tockstein's Motion for Summary Judgment [doc. #57] is **GRANTED, in part,** and **DENIED, in part.** It is granted as to the whether she provided instruction to Construction Supply on how to apply payments. However, Count II remains pending against Theresa Tockstein for any misrepresentations she made in the vouchers and Count III also remains pending against Theresa Tocksetin.

**IT IS FURTHER ORDERED** that Plaintiff's Tracy Tockstein's Motion for Summary Judgment on Counts II and III of Defendants' Second Amended Counterclaim [doc. #58] is **GRANTED, in part,** and **DENIED, in part.** Count II remains pending against Plaintiff for representations Plaintiff made related to his home construction experience and his acceptance of these vouchers. Count III also remains pending against Plaintiff. However, any allegations in Count II involving statements Plaintiff made about his ability to complete the project are not actionable.

**IT IS FURTHER ORDERED** that Plaintiff's and Third-Party Defendant's Joint Motion to Strike Defendants' Unauthorized Additional Responses to Plaintiff's and Third-Party Defendants' Motions for Summary Judgment [doc. #67] is **GRANTED.**

Dated this 12th Day of March, 2009.

                                        E. RICHARD WEBBER
                                        UNITED STATES DISTRICT JUDGE